FILED APR 17 '26 AM 9:34
MDGA-MAC

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

MARIO R. SULLIVAN,

    Plaintiff,

v.

TYRONE OLIVER, et al.,

    Defendants.

Civil Action No. 5:26-cv-00043-CAR-CHW

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**
42 U.S.C. § 1983 — Conditions of Confinement
Deliberate Indifference / Retaliation

**JURY TRIAL DEMANDED**

**PRELIMINARY STATEMENT**

This is a civil rights action brought by Mario Romoan Sullivan (GDC #965797), an incarcerated person at Wilcox State Prison, Abbeville, Georgia. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 arising from the chronic, documented Legionella bacterial contamination of the drinking water at Wilcox State Prison — contamination that the State of Georgia has formally and repeatedly acknowledged in official written notices — which has caused Plaintiff to suffer four separate, confirmed Legionella infections, bilateral inguinal hernias, delayed and falsified medical care, and ongoing constitutional harm.

This action is corroborated by the parallel case of Plaintiff's fellow incarcerated person, Jarvis Augustus Ware (GDC #423117), age 77, whose independent civil rights complaint — Ware v. Thomas, et al., filed in this Court — arises from the identical contaminated water supply and names substantially the same defendants. Mr. Ware has been diagnosed with Legionella infection, required hospitalization as a direct result, and continues to be exposed to the same contaminated water. Mr. Ware provided a sworn affidavit in support of Plaintiff's claims and is identified as a witness in this action. The mutual evidentiary corroboration between these two cases — one brought by a man in his prime serving a life sentence, the other by a 77-year-old grandfather in the final chapter of his life — establishes that the constitutional violations at Wilcox State Prison are not isolated incidents but systemic, ongoing, and institutionally sanctioned failures.

1

# I. JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983, the First, Eighth, and Fourteenth Amendments to the United States Constitution. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in the Macon Division of the Middle District of Georgia pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this action occurred at Wilcox State Prison, located in Abbeville, Wilcox County, Georgia.

3. All Defendants acted at all relevant times under color of state law within the meaning of 42 U.S.C. § 1983.

# II. PARTIES

## A. Plaintiff

4. Plaintiff MARIO ROMOAN SULLIVAN is an incarcerated person in the custody of the Georgia Department of Corrections (GDC), assigned GDC number 965797, and currently housed at Wilcox State Prison, P.O. Box 397, Abbeville, Georgia 31001. Plaintiff is serving a life sentence following a conviction in Floyd County Superior Court. He brings this action pro se.

## B. Defendants

5. Defendant TYRONE OLIVER is the Commissioner of the Georgia Department of Corrections. He is sued in his official capacity for prospective injunctive relief. As Commissioner, Defendant Oliver bears ultimate institutional responsibility for the health, safety, and welfare of all persons incarcerated in GDC facilities. Official notices posted at Wilcox State Prison regarding Legionella contamination and disease constitute matters that would, through standard reporting protocols, be communicated to and reviewed by the Commissioner, thereby placing him on actual notice of the ongoing constitutional violations.

6. Defendant MICHAEL THOMAS is the current Warden of Wilcox State Prison. He is sued in both his official capacity for prospective injunctive relief and in his individual capacity for damages. As Warden, Defendant Thomas has direct supervisory authority over all conditions of confinement at Wilcox State Prison. He has personally authorized retaliatory actions — including the withholding of food and benefits from Dorm D3 — against incarcerated individuals who complained about the contaminated water conditions.

7. Defendant CHARLES MIMS is the former Warden of Wilcox State Prison. He is sued in his individual capacity. As Warden, Defendant Mims posted official notices acknowledging that the prison's water supply was contaminated with Legionella bacteria and that inmates had been

2

diagnosed with Legionnaires' disease, yet failed to take responsible and reasonable measures to abate the known risk.

8. Defendant STEVEN CHARLES CRAWFORD is a medical staff member at Wilcox State Prison. He is sued in his individual capacity. In response to Plaintiff's grievance regarding his medical condition, Defendant Crawford inserted a fraudulent sworn affidavit into Plaintiff's medical file falsely claiming that Plaintiff was straining to make test results show false positives, deliberately obstructing Plaintiff's access to care.

9. Defendant DR. ROBERT BRADFORD is a medical provider (N.P.) at Wilcox State Prison. He is sued in his individual capacity for deliberate indifference to Plaintiff's recurring Legionella infections and hernia pain. Defendant Bradford treated Plaintiff for repeated Legionella infections, prescribing antibiotics including Bactrim and Zithromax, while simultaneously failing to address the environmental source of contamination and failing to provide adequate follow-up care. He similarly provided treatment to fellow incarcerated person Jarvis Ware (GDC #423117) during his Legionella infection, while also failing to secure Mr. Ware's transfer away from the contaminated facility.

10. Defendant DR. SHARON LEWIS is the GDC Statewide Medical Director. She is sued in her official capacity. She is responsible for the systemic delivery of medical care throughout the GDC. The diagnosis and treatment of Legionnaires' disease within a state prison constitutes a reportable health event that would, as a matter of law and standard medical protocol, be brought to her attention. The same Legionella outbreak that caused Plaintiff's four documented infections also caused the hospitalization of 77-year-old Jarvis Ware (GDC #423117), facts that would independently require Dr. Lewis's intervention as a matter of medical protocol.

11. Defendant JENNIFER AMMONS is the General Counsel for the GDC. She is sued in her official capacity. She is responsible for addressing systemic legal violations and liability within the GDC. The official admission of a hazardous condition causing disease — documented in two separate written notices from Wilcox State Prison's own Warden — would as a matter of standard institutional practice be reported to and reviewed by legal counsel. The separate filing of Ware v. Thomas, et al. in this Court, naming overlapping defendants, further placed Defendant Ammons on actual notice of the ongoing constitutional violations.

12. Defendant ANNA TRUSZCZYNSKI is the Director of the Georgia Environmental Protection Division. She is sued in her official capacity. She is responsible for enforcing environmental and water safety standards. The official confirmation of chronic bacterial contamination in a public water system serving a state facility would be reported to her agency.

13. Defendant DR. KATHLEEN E. TOOMEY is the Commissioner of the Georgia Department of Public Health. She is sued in her official capacity. She is responsible for protecting public health and controlling the spread of communicable disease. The declaration of Legionnaires'

3

disease cases in a state congregate facility constitutes a reportable public health event within her jurisdiction.

14. Defendant DR. WILLIAM WILLOUGHBY is a medical doctor at Crisp Regional Medical Center. He is sued in his individual capacity for his role in misdiagnosing Plaintiff's bilateral inguinal hernias, falsely concluding there was no hernia, thereby delaying necessary surgical intervention and causing prolonged pain.

15. Defendant DR. MICHAEL THOMAS is a medical doctor at Crisp Regional Medical Center. He is sued in his individual capacity for his role in misdiagnosing Plaintiff's bilateral inguinal hernias.

### III. STATEMENT OF FACTS

**A. The State's Own Admissions: Official Written Notices of Legionella Contamination**

16. On December 5, 2023, then-Warden Charles Mims issued a formal written notice to the incarcerated population of Wilcox State Prison bearing the official seal of the Georgia Department of Corrections. The notice acknowledged that the prison's water supply was contaminated with Legionella bacteria and that individuals at the facility had been diagnosed with Legionnaires' disease.

17. On March 14, 2024 — more than three months after the first notice — Warden Mims issued a second official notice, again acknowledging confirmed Legionnaires' disease diagnoses and Legionella contamination of the facility's water systems. The issuance of a second notice is itself a damning admission: the contamination had not been remediated. The pathogen remained in the water.

18. Both official notices explicitly warned that individuals 50 years of age or older face substantially elevated risk of contracting Legionnaires' disease. This warning directly implicates Plaintiff's fellow incarcerated person and corroborating witness, Jarvis Augustus Ware (GDC #423117), who was 77 years old when both notices were issued — exceeding the identified risk threshold by 27 years. Mr. Ware has since contracted Legionella infection, been hospitalized, and filed his own civil rights complaint in this Court arising from the same contamination. His case and the sworn affidavit he provided in support of this action constitute direct, independent corroboration of the systemic nature of the contamination.

19. Both Plaintiff and Mr. Ware were housed at Wilcox State Prison during the periods covered by the official notices. Both drank from, bathed in, and were exposed to the same contaminated water supply. Both suffered confirmed Legionella infections. The State of Georgia was aware of the risk to both of them and failed to act.

4

## B. The Parallel Case: Jarvis Ware's Corroborating Evidence

20. Jarvis Augustus Ware (GDC #423117) is a 77-year-old incarcerated person housed at Wilcox State Prison. Mr. Ware is named as a witness in this action and provided a sworn affidavit in support of Plaintiff's claims. He has independently filed a civil rights complaint in this Court — Ware v. Thomas, et al. — arising from the same Legionella contamination.

21. Mr. Ware was diagnosed with Legionella bacterial infection as a direct result of the contaminated water at Wilcox State Prison. He became severely ill and required hospitalization for approximately three days, during which he suffered severe gastrointestinal distress, respiratory complications, and systemic illness.

22. Following his hospitalization, Mr. Ware was returned to Wilcox State Prison — the same facility with the same contaminated water supply — where he again was exposed to the ongoing contamination. He has not been provided with a safe alternative water supply. He continues to be exposed to water that the State of Georgia has formally acknowledged contains Legionella pneumophila bacteria.

23. At 77 years of age, Mr. Ware faces a mortality risk from Legionella infection substantially greater than that of younger individuals. The CDC estimates that approximately 1 in 10 who develop Legionnaires' disease will die; for elderly individuals with age-related immune compromise, that rate is substantially higher.

24. The parallel existence of Ware v. Thomas, et al. in this Court, arising from the same facts, the same facility, the same water supply, and naming substantially the same defendants, establishes that the constitutional violations alleged in this complaint are not isolated or episodic but reflect a pattern of systemic, institutionalized deliberate indifference to the health and safety of the incarcerated population at Wilcox State Prison.

25. A fact this Court should find deeply troubling: GDC staff at Wilcox State Prison were reportedly provided bottled water and instructed not to drink from the tap. The people in the State's custody — including a 77-year-old man and Plaintiff, who contracted Legionella four separate times — were given no equivalent protection.

## C. Plaintiff's Four Documented Legionella Infections

26. Plaintiff has suffered four separate, confirmed Legionella infections directly resulting from the contaminated water at Wilcox State Prison:

(A) December 17, 2023: Plaintiff was tested and results were positive for Legionella bacteria. On December 18, 2023, Plaintiff was prescribed Bactrim by Defendant Dr. Robert Bradford.

5

(B) January 4, 2024: While at Walton County Sheriff's Office being processed for court intake, Plaintiff became severely ill and tested positive for Legionella a second time — confirming the infection originated from his place of incarceration. He was treated with Macrobid antibiotic.

(C) March 14, 2024: Plaintiff tested positive and was prescribed Zithromax (Azithromycin) antibiotics. Notably, this third infection occurred on the same day Warden Mims posted his second official contamination notice — confirming that despite the State's own acknowledged awareness, the contamination remained unabated.

(D) July 23, 2024: Plaintiff was again prescribed Zithromax (Azithromycin) for a fourth confirmed Legionella infection. Pharmacy dispensing records from Correct Rx Pharmacy Services confirm each antibiotic prescription.

### D. Causal Chain: Contaminated Water, Urinary Obstruction, and Bilateral Inguinal Hernias

27. The consumption of contaminated water caused severe urinary and prostatic complications, forcing Plaintiff to strain violently during urination. This chronic straining directly caused bilateral inguinal hernias.

28. Medical science recognizes that recurrent bacterial infections and chronic inflammatory exposure can cause or exacerbate lower urinary tract dysfunction, including prostatitis, prostate enlargement, urinary retention, and obstructive voiding symptoms.

29. Plaintiff required treatment with Tamsulosin (Flomax) to relieve urinary obstruction. Defendants were aware of Plaintiff's urinary difficulties yet failed to address the environmental source of inflammation, allowing the condition to worsen over time.

30. Plaintiff's hernias were a direct and foreseeable consequence of untreated urinary obstruction. Chronic straining to urinate due to obstructive urinary conditions is a well-established medical cause of inguinal hernia formation. Plaintiff's urinary obstruction forced repeated Valsalva maneuvers, increasing intra-abdominal pressure and progressively weakening the inguinal canal.

### E. Deliberate Indifference, Fraud, and Surgical Delay

31. On February 25, 2025, Plaintiff's hernia pain was so severe he could not walk and was transported via EMS to Crisp Regional Medical Center.

6

32. Defendants Willoughby and Dr. M. Thomas failed to diagnose the hernias, falsely concluding there was 'no hernia.'

33. Upon return to Wilcox State Prison, Defendants Bradford and Crawford provided no care, giving Plaintiff the proverbial 'cold shoulder.'

34. Plaintiff remained in severe pain, forced to walk to meals and to pill call, further exacerbating his hernias.

35. On March 4, 2025, in response to a grievance filed by Plaintiff, Defendant Crawford inserted a fraudulent sworn affidavit into Plaintiff's file, claiming Plaintiff was 'straining to make the test show false results,' deliberately obstructing his access to care.

36. As a last resort, Plaintiff wrote to another physician at the prison, Dr. Brooks, who quickly diagnosed the bilateral inguinal hernias and scheduled surgery, which was successful within three weeks.

## F. Retaliatory Food Deprivation (Dorm D3)

37. Plaintiff engaged in protected activity by filing grievances and legal claims concerning the unconstitutional conditions of contaminated water at Wilcox State Prison.

38. On December 18, 2025, Defendant Michael Thomas (Warden) authorized the withholding of an incentive meal and warden/chaplain holiday packages from Plaintiff's entire dorm (D3). This deprivation occurred without disciplinary charges, hearings, or individualized findings, and despite other dorms — including one with recent severe security incidents — receiving the same benefits.

39. Food deprivation as punishment violates clearly established law and GDC policy and would deter a person of ordinary firmness from engaging in protected activity. The temporal proximity and disparate treatment support a plausible inference of retaliatory motive.

## G. Psychological Harm and Ongoing Violations

40. Plaintiff suffers from pre-existing anxiety and depression. The forced consumption of contaminated water, the repeated serious illnesses, the denial of medical care, and the apparent cover-up have severely heightened his psychological distress.

41. The retaliation and dangerous conditions persist under current Warden Michael Thomas, who has actively participated in these ongoing constitutional violations.

7

## H. Additional Evidence of Systemic Environmental Neglect

42. The Legionella contamination of Wilcox State Prison's water supply does not exist in isolation. The shower facilities utilized daily by Plaintiff and other incarcerated persons exhibit extensive visible black mold growth on ceilings and surrounding structures — conditions arising from the same underlying institutional failures: deteriorating infrastructure, persistent moisture accumulation, and chronic failure to maintain adequate sanitation and ventilation systems. Mold colonization of this kind is medically recognized as a contributing factor to respiratory compromise and immune system stress, both of which increase an individual's susceptibility to opportunistic bacterial infections, including Legionella pneumophila.

43. The coexistence of Legionella-contaminated water and mold-colonized shower facilities reflects a single, continuous pattern of environmental neglect rather than separate, unrelated events. Defendants' failure to maintain the plumbing infrastructure that allowed Legionella to persist is the same category of institutional indifference that permits mold to proliferate unchecked in communal living spaces. This broader pattern of neglect is relevant to the deliberate indifference analysis and reinforces that the constitutional violations described herein are systemic and institutionally sanctioned, not episodic or inadvertent.

## IV. CLAIMS FOR RELIEF

### COUNT ONE — Eighth Amendment: Deliberate Indifference to Health and Safety (42 U.S.C. § 1983)

### Against Official Capacity Defendants and Defendant Mims (Individual)

44. Plaintiff incorporates all preceding paragraphs by reference.

45. Defendants were aware of a substantial risk of serious harm from contaminated water. Their failure to act constitutes deliberate indifference under Farmer v. Brennan, 511 U.S. 825 (1994). The ongoing violations result from policies, customs, and failures to supervise, actionable for injunctive relief under Monell v. Department of Social Services. The corroborating evidence from Ware v. Thomas, et al. — including the separate hospitalization of a 77-year-old incarcerated person from the same water supply — demonstrates that this is not an isolated incident but a systemic institutional failure. The broader pattern of environmental neglect at the facility, including conditions that contribute to immune compromise and increased infection susceptibility, further supports the inference that Defendants' indifference was institutionalized and ongoing.

### COUNT TWO — Eighth Amendment: Deliberate Indifference to Serious Medical Needs (42 U.S.C. § 1983)

### Against Defendants Crawford, Bradford, Willoughby, and Dr. M. Thomas

46. Plaintiff had objectively serious medical needs. Defendants knowingly delayed, denied, or obstructed care, including by falsifying records. The right to adequate medical care was clearly established.

**COUNT THREE — First Amendment: Retaliation (42 U.S.C. § 1983)**

**Against Defendant Michael Thomas (Individual)**

47. Plaintiff engaged in protected conduct. Defendant Thomas imposed adverse action by withholding food-based benefits. By authorizing unjustified food deprivation, Defendant Thomas retaliated for Plaintiff's grievances and global resolution of claims filed along with several others. The conduct lacked legitimate penological justification and violated clearly established law.

**COUNT FOUR — Fourteenth Amendment: Substantive Due Process / Bodily Integrity (42 U.S.C. § 1983)**

**Official Capacity Liability / Supervisory Liability**

48. The forced consumption of water contaminated with a potentially lethal bacterial pathogen, under conditions of confinement where Plaintiff has no ability to obtain alternative water, constitutes an ongoing deprivation of bodily integrity cognizable under the Fourteenth Amendment's substantive due process guarantee. The parallel experience of 77-year-old Jarvis Ware, hospitalized from the same water supply, illustrates the severity and foreseeability of the harm.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. Declaratory Relief: Declare that Defendants violated the United States Constitution;

B. Injunctive Relief ordering: (1) provision of safe drinking water and cessation of exposure to known Legionella sources; (2) independent testing and remediation; (3) prohibition of food-based punishment; (4) non-retaliation protections; (5) preservation of all records related to water testing, medical care, and grievances;

C. Compensatory Damages against individual capacity Defendants, jointly and severally, in the amount of $2,500,000 for: physical pain and suffering from four Legionella infections; pain and suffering from untreated hernias and delayed surgery; severe emotional distress and mental anguish; and medical expenses and ongoing health complications;

9

D. Punitive Damages against each individual capacity Defendant:

   - Charles Mims: $500,000

   - Steven Crawford: $750,000

   - Dr. Robert Bradford: $500,000

   - Dr. William Willoughby: $250,000

   - Dr. Michael Thomas (Crisp Regional): $250,000

E. Costs of this action;

F. Any further relief as the Court deems just and proper.

**JURY DEMAND: Plaintiff requests trial by jury on all claims so triable.**

## VERIFICATION

I, Mario Romoan Sullivan, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Respectfully submitted this 18th day of March, 2026.

Mario R. Sullivan, Pro Se
GDC #965797
Wilcox State Prison
P.O. Box 397
Abbeville, Georgia 31001