**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **MARIO ROMOAN SULLIVAN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:26-cv-43-CAR-CHW** |
| | : | |
| **TYRONE OLIVER, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**ORDER AND RECOMMENDATION**

Presently pending before the Court are the claims of *pro se* Plaintiff Mario Romoan Sullivan, an inmate in the Wilcox State Prison in Abbeville, Georgia, seeking relief pursuant to 42 U.S.C. § 1983 (ECF No. 1). Plaintiff has also moved for leave to proceed *in forma pauperis* in this case (ECF No. 3); for appointed counsel (ECF No. 4); for preliminary injunctive relief (ECF No. 5, 6); to amend his Complaint (ECF Nos. 9, 10, 13); to retain witnesses (ECF No. 11); and for a protective order and judicial inspection (ECF No. 12). For the following reasons, Plaintiff's motion for appointed counsel is **DENIED.** His motion to proceed *in forma pauperis* and his motions to amend are **GRANTED**, and Plaintiff's claims that Defendant Mims in his individual capacity was deliberately indifferent to Plaintiff's health and safety in violation of the Eighth Amendment shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice** and that his motions for injunctive relief, to retain witnesses, and for a judicial inspection be **DENIED at this time.**

## MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff first seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Plaintiff's submissions demonstrate that he is presently unable to pay the cost of commencing this action. His application to proceed *in forma pauperis* (ECF No. 3) is therefore **GRANTED**.

However, a prisoner allowed to proceed IFP must still pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I. <u>Directions to Plaintiff's Custodian</u>

Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any

successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee

II. Plaintiff's Obligations on Release from Custody

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## MOTION FOR APPOINTED COUNSEL

Plaintiff also requests appointed counsel. "Appointment of counsel in a civil case is not a constitutional right." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990). "A

court's appointment of counsel in a civil case is warranted only in exceptional circumstances, and whether such circumstances exist is committed to the district court's discretion." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (citing *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996)). In determining whether a case presents extraordinary circumstances, the Court considers

> (1) the type and complexity of the case; (2) whether the plaintiff is capable of adequately presenting his case; (3) whether the plaintiff is in a position to adequately investigate the case; (4) whether the evidence "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination"; and (5) whether the appointment of counsel would be of service to the parties and the court "by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." The District Court may also inquire into whether the plaintiff has made any effort to secure private counsel.

*DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

The Court has considered Plaintiff's motion and—after applying the factors set forth above—concludes that the appointment of counsel is not justified. Plaintiff has demonstrated the ability to litigate his case, including filing pleadings and motions sufficiently setting out his contentions to allow review by this Court. Additionally, at this early stage in the litigation, it is unclear if the case will proceed to trial. Thus, there is no basis to conclude that counsel will be needed for the presentation of evidence or cross examination of witnesses. Plaintiff, "like any other litigant[], undoubtedly would [be] helped by the assistance of a lawyer, but [his] case is not so unusual" that appointed counsel is necessary. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). As such, Plaintiff's

motion for appointment of counsel (ECF No. 4) is **DENIED**.[1] Should it later become apparent that legal assistance is required in order to avoid prejudice to Plaintiff's rights, the Court, **on its own motion**, will consider assisting him in securing legal counsel at that time. Consequently, there is no need for Plaintiff to file additional requests for counsel.

## PRELIMINARY SCREENING OF PLAINTIFF'S CLAIMS

### I. Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller*

[1] The federal *in forma pauperis* statute authorizes courts to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The statute does not, however, provide any funding to pay counsel for their representation or authorize courts to compel counsel to represent an indigent party in a civil action. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989); *Taylor v. Pekerol*, 760 F. App'x 647, 651 (11th Cir. 2019) (stating that district court has no "inherent power" to compel counsel to represent a civil litigant and § 1915 provides no such authority).

*v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v.*

*Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

**II. Factual Allegations**

Plaintiff's claims arise from his present incarceration at the Wilcox State Prison ("WSP"). ECF No. 13-1 at 1.[2] Plaintiff contends that on December 5, 2023, the warden of WSP, Defendant Charles Mims, "issued a formal written notice" to prisoners at WSP stating "that the prison's water supply was contaminated with Legionella bacteria and that individuals at the facility had been diagnosed with Legionnaire's disease." *Id.* at 4. On December 17, 2023, Plaintiff tested positive for Legionella bacteria, and a prison medical provider, Defendant Dr. Robert Bradford, prescribed Bactrim, an antibiotic. ECF No. 13-1 at 5. Plaintiff "became severely ill" on January 4, 2024, and he again tested positive for Legionella and was prescribed antibiotics. *Id.* at 6. On March 14, 2024, Defendant Mims "issued a second official notice, again acknowledging confirmed Legionnaires' disease diagnoses and Legionella contamination of the facility's water systems." *Id.* at 4. Plaintiff tested positive for Legionella bacteria again on March 14, 2024, and he was again

[2] Plaintiff's motions to amend his original Complaint (ECF Nos. 9, 10, 13) are **GRANTED**, and Plaintiff's First Amended Complaint ("FAC") (ECF No. 13-1) is the operative pleading in this case. *See Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (holding that generally, "[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averment against his adversary" (alteration in original) (citation omitted)); *see also* ECF No. 13 at 2 (requesting that the Clerk docket the FAC "as the operative pleading in this action").

prescribed antibiotics. *Id.* at 6. On July 23, 2024, Plaintiff tested positive for the fourth time and was again treated with antibiotics. *Id.*

Plaintiff contends these repeated infections "caused severe urinary and prostatic complications, forcing Plaintiff to strain violently during urination." ECF No. 13-1 at 6. Plaintiff also contends that "[t]his chronic straining directly caused bilateral inguinal hernias." *Id.* He consequently developed "hernia pain . . . so severe he could not walk and was transported via EMS to Crisp Regional Medical Center" on February 25, 2025. *Id*. He contends, however, that two medical providers at the hospital—Defendants Dr. William Willoughby and Dr. Michael Thomas—failed to diagnose the hernias, "falsely concluding there was 'no hernia.'" *Id.* at 7, 10. When Plaintiff returned to WSP, he contends Defendant Bradford and another prison medical provider, Defendant Crawford "provided no care, giving Plaintiff the proverbial 'cold shoulder.'" *Id.* at 7.

Plaintiff continued to experience severe pain and ultimately filed a grievance related to his medical condition. ECF No. 13-1 at 7. He contends that in response to this grievance, "Defendant Crawford inserted a fraudulent sworn affidavit into Plaintiff's file, claiming Plaintiff was 'straining to make the test show false results,'" which "deliberately obstruct[ed Plaintiff's] access to care." *Id.* Plaintiff contacted another prison physician "[a]s a last resort . . . who quickly diagnosed the bilateral inguinal hernias and scheduled surgery, which was successful within three weeks." *Id.*

Plaintiff also claims that Defendant Michael Thomas, who replaced Defendant Mims as WSP's warden, retaliated against him for complaining about the contaminated

water. ECF No. 13-1 at 7.[3] Plaintiff specifically contends that on December 18, 2025, Defendant Warden Thomas "authorized the withholding of an incentive meal and warden/chaplain holiday packages from Plaintiff's entire dorm" without any "disciplinary charges, hearings, or individualized findings, and despite other dorms—including one with recent severe security incidents—receiving the same benefits." *Id.*

In addition to Defendants Mims, Bradford, Willoughby, Dr. Michael Thomas, Crawford, and Warden Thomas, Plaintiff names the GDC Commissioner, Tyrone Oliver; the GDC Statewide Medical Director, Dr. Sharon Lewis; and the GDC General Counsel, Jennifer Ammons, as Defendants in this action. ECF No. 13-1 at 2-3. Plaintiff also names Anna Truszczynski, the Director of the Georgia Environmental Protection Division, and Dr. Kathleen E. Toomey, the Commissioner of the Georgia Department of Public Health, as Defendants. *Id.* at 3. He contends these Defendants' actions and inaction violated his constitutional rights, and as a result he seeks declaratory relief, injunctive relief (including prospective and preliminary injunctive relief), compensatory damages, punitive damages, costs, and "[a]ny further relief as the Court deems just and proper." *Id.* at 9-10.

## III. Plaintiff's Claims

### A. <u>Deliberate Indifference to Health or Safety Claims against Defendant Mims in his Individual Capacity and All Defendants in their Official Capacities</u>

#### *1. Individual Capacity Claims*

---

[3] There are two Defendants in this case named Michael Thomas: Dr. Michael Thomas, a physician at Crisp Regional Medical Center, who will be referred to as "Defendant Dr. Michael Thomas," and Michael Thomas, the current warden of Wilcox State Prison, who will be referred to as "Defendant Warden Thomas." ECF No. 13-1 at 2-3.

A convicted prisoner who shows that prison officials have subjected prisoners to conditions that "involve the wanton and unnecessary infliction of pain" or are deliberately indifferent to their health or safety may state a claim for relief under the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Hall v. Skipper*, 808 F. App'x 958, 960 (11th Cir. 2020) ("Where the prisoner challenges his conditions of confinement, the relevant inquiry is whether the prison officials involved acted with 'deliberate indifference' to the prisoner's health or safety."). This type of claim has both objective and subjective components. *Christmas v. Nabors*, 76 F.4th 1320, 1331 (11th Cir. 2023). To state a claim, an inmate must first show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks and citation omitted), or if "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

To meet the subjective standard in a prison conditions case, a plaintiff must show that the prison official acted with deliberate indifference. *Thomas*, 614 F.3d at 1304; *Hall*, 808 F. App'x at 960. To establish deliberate indifference a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the

criminal law.'" *Wade*, 106 F.4th at 1255 (first citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020); and then quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). The first prong—subjective awareness—requires "that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). The second prong—disregard of the risk—is objective and the facts must show that the defendant responded to the known risk in an objectively unreasonable manner. *Marbury*, 936 F.3d at 1233 (citation omitted). The third prong—subjective recklessness—is satisfied only if the plaintiff shows "that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1253.

The plaintiff must also establish causation by showing "a 'necessary causal link' between the [prison official's] failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (citation omitted). This inquiry focuses "on whether an official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). "[T]he 'critical' question is whether [the defendant] was 'in a position to take steps that could have averted the [injury] . . . but, through [deliberate] indifference, failed to do so.'" *Rodriguez*, 508 F.3d at 622 (citation omitted) (omission in original).[4]

---

[4] As one court noted, there is overlap between deliberate indifference and causation: "To be clear, authority and means to remedy the excessive risk . . . bears directly on causation; however, it overlaps with deliberate indifference because an official can rarely manifest a deliberately indifferent state of mind by failing to do something that was not in the official's

Although Plaintiff brings these Eighth Amendment claims against all Defendants in their official capacities, he has only brought individual capacity claims against Defendant Mims. ECF No. 13-1 at 8. Plaintiff has sufficiently alleged that his exposure to Legionella constituted an objectively serious condition of confinement. *See, e.g.*, *Helling*, 509 U.S. at 33 ("We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water…."); *Williams v. Quiros*, No. 3:22-CV-01367 (SRU), 2023 WL 4627649, at *5 (D. Conn. July 19, 2023) (noting that "[c]ourts have held that subjecting inmates to unsafe or unhealthy drinking and bathing water constitutes a sufficiently 'serious' risk that would satisfy the objective element of an Eighth Amendment cause of action").

The question of whether Plaintiff has pleaded facts sufficient to show that Defendant Mims was deliberately indifferent to that risk is a close one. A prison official cannot be deliberately indifferent to a substantial risk to inmate health or safety if the official responds reasonably to the risk, even if an inmate is ultimately harmed. *See Wade*, 106 F.4th at 1253. On one hand, the pleadings indicate that some testing and treatment of the water at WSP occurred during Defendant Mims' tenure as warden. Jarvis Ware, an inmate whose claims Plaintiff cross-references because they "corroborate[] Plaintiff's factual allegations with additional documentary precision and mutual evidentiary force," ECF No. 13 at 2, acknowledged in one of his filings that contractors collected water samples every

power to do. Accordingly, the court considers authority and power as to deliberate indifference and causation." *Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1075 n.28 (M.D. Ala. 2023) (citing *Rodriguez*, 508 F.3d at 622).

two weeks at WSP beginning shortly after Mr. Ware's December 13, 2023, diagnosis of a Legionella infection. ECF No. 10 at 2 in *Ware v. Myers*, 1:24-cv-00103-LAG-ALS (M.D. Ga. Jan. 21, 2025) ("*Ware I*"). The contractors told Mr. Ware that they were "checking the water for . . . bacteria," presumably including Legionella, and they would add chlorine to the water to kill any bacteria that were found. *Id.*[5]

On the other hand, Plaintiff alleges that "GDC staff at Wilcox State Prison were reportedly provided bottled water and instructed not to drink from the tap," but inmates were not given the same consideration. ECF No. 13-1 at 5. It is also significant that Plaintiff suffered four Legionella infections between December of 2023 and July of 2024, suggesting that whatever steps Defendant Mims was taking to remediate the contamination at that time were not adequate. *See id.* at 5-6. Plaintiff also alleges that he suffered significant health problems as a result of his exposure to Legionella. *See, e.g., id.* at 9. Construing these allegations liberally and taking them as true, as the Court must at this early stage, they are sufficient to permit these Eighth Amendment claims to proceed against Defendant Mims in his individual capacity. *See, e.g., Smith v. Leonard*, 244 F. App'x 583, 584 (5th Cir. 2007) (allegations that inmate who suffered "headaches, sinus problems, trouble breathing, blurred vision, irritated eyes, and fatigue" as the result of mold in his

[5] The Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and may do so "on its own" and "at any stage of the proceeding." Fed. R. Evid. 201(b), (c), (d). "If the court takes judicial notice before notifying a party," however, the party must have an opportunity to be heard as to whether judicial notice is appropriate. Fed. R. Evid. 201(e). The Court also has authority to take judicial notice of its own records. *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

cell were "sufficient to preclude a determination that his mold claim is frivolous or fails to state a claim" for purposes of preliminary screening); *Leary v. Geo Group, Inc.*, No. 5:17-cv-00022-MTT-CHW, 2017 WL 7035672, at *4 (M.D. Ga. Oct. 6, 2017) (finding that allegations that prison officials "knowingly exposed" prisoner to black mold and "failed to take any action to remove the mold from the dormitory or to alleviate the conditions that allowed the infestation to occur" were sufficient to survive initial screening).[6]

2. *Official Capacity Claims*

Plaintiff also raises claims against each Defendant in his or her official capacity regarding the conditions of his confinement.[7] "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an

[6] Plaintiff also contends that "[t]he forced consumption of water contaminated with a potentially lethal bacterial pathogen, under conditions of confinement where Plaintiff has no ability to obtain alternative water, constitutes an ongoing deprivation of bodily integrity cognizable under the Fourteenth Amendment's substantive due process guarantee." ECF No. 13-1 at 9. The Court cannot rely on the concept of substantive due process where another, more specific constitutional provision already addresses a particular alleged violation. *See Albright v. Oliver*, 510 U.S. 266, 288 (1994) (holding that "the Court has resisted relying on the Due Process Clause when doing so would have duplicated protection that a more specific constitutional provision already bestowed"). Because the Eighth Amendment already requires Defendants to provide safe water to inmates, there is no need for the Court to rely on substantive due process or the Fourteenth Amendment in this case. Any Fourteenth Amendment claims Plaintiff seeks to raise in this case should therefore be dismissed.

[7] Plaintiff does not allege that Defendants Willoughby and Dr. Michael Thomas had anything to do with the conditions of Plaintiff's confinement. Any related claims against these Defendants, even in their official capacities, should therefore be dismissed without prejudice. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation). Plaintiff's claims that these Defendants were deliberately indifferent to his serious medical needs are addressed in Section III.B. of this Order and Recommendation.

agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks and citation omitted). When the "entity of which an officer is an agent" is the State itself or an "arm of the state," Eleventh Amendment immunity applies to bar the lawsuit. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). "Under the Eleventh Amendment, state officials sued for damages in their official capacity," such as the individual Defendants in this case, "are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). The Supreme Court, however, set forth an exception to this rule in *Ex parte Young*, 209 U.S. 123 (1908). *Ex parte Young* provides an "exception . . . for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). In other words, the exception "permit[s] prospective injunctive relief against state officers in their official capacities to refrain from unconstitutional conduct even though compliance may cost the state money." *Luckey v. Harris*, 860 F.2d 1012, 1014 (11th Cir. 1988).

Regarding his conditions-of-confinement claims, Plaintiff names individuals from three different state entities as Defendants in this lawsuit: the GDC, the Georgia Environmental Protection Division, and the Georgia Department of Public Health. Plaintiff's claims for monetary damages against the individual state employees from each of these agencies in their official capacities are barred by the Eleventh Amendment and should therefore be dismissed.

Plaintiff also seeks injunctive relief designed to end any continuing Legionella contamination and exposure. *See* ECF No. 13-1 at 9; *see also id.* at 8 (suggesting that

"deteriorating infrastructure, persistent moisture accumulation, and chronic failure to maintain adequate sanitation and ventilation systems" have contributed to "systemic and institutionally sanctioned" constitutional violations). The Court must therefore determine whether Plaintiff has pleaded facts sufficient to show a continuing violation that warrants prospective injunctive relief. He has failed to do so.

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiff[s] must establish that they have standing to sue." *Id.* (internal quotation marks and citation omitted). A plaintiff can establish Article III standing by describing an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id.* at 409 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). The purpose of the imminence requirement "is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending," and thus "[a]llegations of *possible* future injury are not sufficient" to establish an injury in fact. *Id.* (internal quotation marks and citations omitted). Rather, a plaintiff seeking prospective injunctive relief must "demonstrate a real and immediate threat of future injury in order to satisfy the injury in fact requirement." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003) (internal quotation marks and citations omitted); *see also Elend v. Bassham*, 471 F.3d 1199, 1207 (11th Cir. 2006) ("The binding precedent in this circuit is clear that for an injury to suffice for prospective relief, it must be imminent.").

Although Plaintiff repeatedly claims that the Legionella contamination at WSP is "ongoing," ECF No. 13-1 at 1, his allegations undermine this contention. The last time Plaintiff was diagnosed with a Legionella infection was in July of 2024, approximately a year and a half prior to the date he filed his original Complaint in this case. *See id.* at 6. He does not identify any other inmate who has been diagnosed with a Legionella infection since July of 2024, nor does he allege that he or any other inmates are presently exhibiting any symptoms of a Legionella infection. Each time he was diagnosed with a Legionella infection prior to filing his complaint, he was treated with antibiotics. *Id.* at 5-6.

The only allegation that could be construed as being related to a continuing threat of injury is Plaintiff's contention that the "mold-colonized shower facilities" contribute to "respiratory compromise and immune system stress." ECF No. 13-1 at 8. Plaintiff appears to suggest that the current presence of mold in the shower increases the likelihood of an individual contracting Legionella pneumophila and is also evidence of "Defendants' failure to maintain the plumbing infrastructure that allowed Legionella to persist." *Id.* Even assuming there is some link between the presence of mold in the showers and increased susceptibility to disease, it also appears that the water at the prison is being tested and treated to prevent the growth of Legionella, as explained above. ECF No. 23 at 3 in *Ware I*. This testing and treatment appear to have been successful at this point despite any issues with the prison's plumbing infrastructure given that neither Plaintiff nor any other inmate at WSP appears to have been diagnosed with a Legionella infection for the last two years.

In short, Plaintiff's speculative and factually unsupported allegations that the mold in the showers may signal an impending Legionella outbreak cannot show that Plaintiff is entitled to prospective injunctive relief. *See, e.g.*, *Smith v. Sec'y, Dep't of Corr.*, 602 F. App'x 466, 471 (11th Cir. 2015) (holding that "prospective claims for future medical needs were not sufficient to confer standing for they were not immediate and remained too speculative"); *Williams*, 2023 WL 4627649, at *7 (finding that claims for prospective injunctive relief under *Ex parte Young* were subject to dismissal where "the only plausible Eighth Amendment claims are based on a constitutional violation that occurred in the past; that is, the delayed response by [prison officials] to mitigate the risk of harm to [the plaintiff] from Legionella bacteria" and there was "no indication that [the plaintiff] is *still* being subjected to an ongoing constitutional violation as it relates to the Legionella bacteria claim"). Plaintiff's claims against Defendants in their official capacities for prospective injunctive relief should therefore be dismissed without prejudice.

B. Medical Treatment Claims against Defendants Crawford, Bradford, Willoughby, and Dr. Michael Thomas

Plaintiff next alleges that he has not received adequate medical treatment for his hernias from Defendants Crawford, Bradford, Willoughby, and Dr. Michael Thomas.[8] ECF No. 13-1 at 8-9. To state an Eighth Amendment claim in this context, a plaintiff must allege facts sufficient to establish: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the

[8] Again, Plaintiff does not appear to allege that he did not receive adequate medical treatment for his Legionella infections; he contends he received antibiotic treatment each time he was infected. ECF No. 13-1 at 5-6.

plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

The first element is objective and requires a plaintiff to set forth a "serious medical need," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann,* 588 F.3d at 1307. "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243). As discussed previously, to establish the second element—deliberate indifference—the plaintiff must show that a prison official was subjectively aware of a substantial risk of serious harm to the plaintiff; that the official failed to respond to this known risk in an objectively reasonable manner; and that the official acted with subjective recklessness. *Wade*, 106 F.4th at 1253. The plaintiff can establish the third element—causation—by demonstrating that the prison official could have taken some action to avert the plaintiff's injury but, through deliberate indifference, failed to do so. *Rodriguez*, 508 F.3d at 622.

Plaintiff has sufficiently alleged that his bilateral inguinal hernias amounted to a serious medical need. *See, e.g.,* ECF No. 13-1 at 6 (describing pain severe enough to preclude walking and requiring treatment at a hospital); *see also id.* at 7 (alleging that a separate prison physician prescribed surgery). He also alleges that Defendants Willoughby and Dr. Michael Thomas "failed to diagnose the hernias, falsely concluding

there was 'no hernia.'" *Id.* at 7.[9] "But mere evidence of negligence 'in diagnosing or treating a medical condition,' or a showing of medical malpractice does not establish deliberate indifference." *DiPietro v. Cooper*, No. 21-12874, 2023 WL 9018423, at *3 (11th Cir. Dec. 29, 2023) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Swain v. Junior*, 961 F.3d 1276, 1285-86 (11th Cir. 2020) (observing that "the deliberate-indifference standard sets an appropriately high bar" and thus allegations of "[o]rdinary malpractice or simple negligence won't do"). Standing alone, Plaintiff's allegation that these two physicians misdiagnosed Plaintiff's condition and believed he did not have a hernia does not rise to the level of a constitutional violation. These claims should be dismissed without prejudice.

Plaintiff also alleges that Defendants Bradford and Crawford provided Plaintiff "no care" once he returned from the hospital to WSP. ECF No. 13-1 at 7. It is important to note, however, that this occurred *after* Plaintiff returned from the hospital where two physicians had concluded—even if erroneously—that Plaintiff did not have a hernia.[10] These allegations do not establish that these Defendants' alleged failure to treat Plaintiff's undiagnosed hernia after he returned from the hospital was anything more than negligence or malpractice. Their alleged inaction therefore does not constitute deliberate indifference.

---

[9] Although it is unclear whether these individuals—who appear to be doctors at an outside hospital—are state actors for purposes of § 1983, this recommendation assumes, without deciding, that they are.

[10] Plaintiff describes Defendant Crawford as "medical staff" and Defendant Bradford as "a medical provider (N.P.)." ECF No. 13 at 3. It is not clear whether either of these individuals are also physicians, although Plaintiff does sometimes refer to Defendant Bradford as "Dr. Robert Bradford." *See, e.g.,* ECF No. 13-1 at 10.

Plaintiff does contend that he "remained in severe pain" after returning from the hospital. ECF No. 13-1 at 7. Severe pain can be a serious medical need. *See Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) ("Under our case law, a reasonable jury could find that [prisoner's] severe pain and suffering constituted a serious medical need."). But Plaintiff has not alleged that either Defendant Bradford or Defendant Crawford were subjectively aware of Plaintiff's pain and failed to treat it. *Wade*, 106 F.4th at 1255. At most, Plaintiff contends Defendant Crawford responded to a grievance filed by Plaintiff, but he does not describe the contents of that grievance. *See* ECF No. 13-1 at 7. To the extent Plaintiff alleges Defendant Crawford included false or fraudulent information about Plaintiff's symptoms in his response to this grievance, the response merely suggested that Defendant Crawford believed Plaintiff was exaggerating his symptoms. *Id.* (noting that Defendant Crawford was "claiming Plaintiff was 'straining to make the test show false results'"). Plaintiff does not point to any specific facts that could show that Defendant Crawford's assessment was wholly unfounded, particularly given that two physicians had recently concluded Plaintiff did not have a hernia. It therefore does not amount to deliberate indifference. *See Townsend v. Cooper*, 759 F.3d 678, 690 (7th Cir. 2014) (holding that doctor's remark that inmate "was faking his symptoms in order to be released" did not "support a conclusion that she was deliberately indifferent"). Accordingly, Plaintiff's Eighth Amendment medical treatment claims should be dismissed without prejudice.

*C. Retaliation Claim against Defendant Warden Thomas*

Plaintiff also contends that Defendant Warden Thomas retaliated against Plaintiff

for filing grievances and legal claims by withholding an incentive meal and holiday packages from Plaintiff's entire dorm on December 18, 2025. ECF No. 13-1 at 7. Plaintiff contends there were no "disciplinary charges, hearings, or individualized findings" prior to this deprivation, and at least one other dorm received the incentive packages despite experiencing "recent severe security incidents." *Id.*

An adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Plaintiff has failed to plead facts to support a causal connection between his filing of grievances or legal claims and the deprivation of the incentive meal and holiday packages. Plaintiff contends that "temporal proximity and disparate treatment support a plausible inference of retaliatory motive." ECF No. 13-1 at 7. "Circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals" may be used to establish a retaliatory motive. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). In this case, however, it is not clear what grievances or legal claims Plaintiff contends he filed near the time of the alleged adverse action. His original Complaint was filed in January of 2026, after the alleged retaliation, and the grievance about his medical care was responded to in March of 2025, months before the alleged retaliation. ECF No. 1-2 at 8; ECF No. 13-1 at 7. Plaintiff has thus failed to establish meaningful temporal proximity

between his protected conduct and the alleged retaliation. Plaintiff has also failed to provide any specific facts that could establish that the other dorms that received incentive meals or holiday packages were similarly situated to his. Absent specific facts supporting his claims of temporal proximity and disparate treatment, Plaintiff has failed to establish a retaliatory motive. His retaliation claims against Defendant Warden Thomas must therefore be dismissed without prejudice.

**MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF**

The Court must also address two motions Plaintiff filed seeking preliminary injunctive relief (ECF Nos. 5, 6). These motions largely reiterate the substantive claims he makes in his Recast Complaint. A temporary restraining order ("TRO") or preliminary injunction is a drastic remedy used primarily to preserve the status quo rather than grant most or all of the substantive relief sought in the complaint. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982).[11] Factors a movant must show to be entitled to a TRO include: "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995).

[11] The standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010).

At this juncture the facts have not been sufficiently developed to conclude that there is a substantial likelihood that Plaintiff will ultimately prevail on the merits. As discussed above, while Plaintiff states the contamination is "ongoing," *see, e.g.,* ECF No. 5 at 5, he has not provided the Court with any specific facts to support this statement. In addition, while the Court understands Plaintiff's concerns about retaliation, federal law already prohibits Defendants from retaliating against Plaintiff or any other inmates for exercising their right to complain about the conditions of their confinement, and entering injunctive relief that merely requires a party to "obey the law" is not permissible. *See Elend*, 471 F.3d at 1209. Furthermore, the Defendants have not been served or had a meaningful opportunity to respond to Plaintiff's allegations. Fed. R. Civ. P. 65(a)(1). Defendants should be afforded an opportunity to respond to Plaintiff's allegations, and any claims for injunctive relief can be addressed as this case proceeds. Accordingly, Plaintiff's motions for preliminary injunctive relief or a TRO should be denied at this time.

**REMAINING PENDING MOTIONS**

Finally, Plaintiff filed a motion for non-disclosure of photo exhibits and for an "unannounced judicial inspection" (ECF No. 12). In this motion, Plaintiff asks the Court to

> refrain from disclosing, providing notice of, or transmitting Photographic Exhibits C-1 through C-5—or any information regarding their existence or contents—to Wilcox State Prison, the Georgia Department of Corrections, Warden Michael Thomas, or any agent, employee, or counsel representing those entities, to the extent permitted by the Court's procedures and applicable law.

ECF No. 12 at 1. Plaintiff contends that if the existence of these photographs is disclosed,

prison officials will retaliate against him and "the photographic evidence itself" will be destroyed. *Id.* at 1-2. Plaintiff also asks the Court to "conduct or order an unannounced inspection of Wilcox State Prison—including Dormitory D3 shower facilities, all other dormitory shower and bathroom facilities, and accessible pipe chases—without prior notice to the facility" if the Court requires "verification of the depicted conditions." *Id.* at 3. As explained below, the GDC is already required to preserve all video recordings and any photographs that may have captured the events giving rise to the complaint, and its failure to do so may result in sanctions. *See Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (explaining that "the destruction of evidence or the significant and meaningful alteration of a document or instrument"—sometimes known as "spoliation"—can result in the imposition of sanctions (citation omitted)). To the extent Plaintiff wishes to preserve these photographs, his motion is therefore moot. At this early stage, any request for an inspection of WSP is premature and should be denied as such.

Plaintiff also filed a "motion to retain witnesses" in which he asks the Court "to acknowledge and preserve the witness designations set forth in Plaintiff's original complaint filed January 30, 2026, and carried forward in the First Amended Complaint[.]" ECF No. 11 at 1. Plaintiff asks the Court to confirm that Jarvis Ware and Barrington Morrison may be designated as witnesses in this case. *Id.* Plaintiff also requests that the Court "enter an order directing Defendants and all agents of the Georgia Department of Corrections to refrain from transferring, separating, retaliating against, or otherwise interfering with Mr. Ware or Mr. Morrison in connection with their status as witnesses in this action." *Id.* It is apparent that Plaintiff wishes to call these two individuals as

witnesses. As noted above, however, federal law already prohibits retaliation against Plaintiff and his fellow inmates, and the Court is generally prohibited from interfering in a prison's legitimate decisions to house inmates in a particular prison or a particular area of the prison. *See Bell v. Wolfish*, 441 U.S. 520, 547 ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). If Plaintiff believes he is being retaliated against in some manner due to his participation in this lawsuit, he may move to supplement his Complaint in accordance with the Federal Rules of Civil Procedure to include such a claim. For now, however, his motion should be denied.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for appointed counsel (ECF No. 4) is **DENIED.** His motion to proceed *in forma pauperis* (ECF No. 3) and his motions to amend (ECF Nos. 9, 10, 13) are **GRANTED**, and Plaintiff's Eighth Amendment claims that Defendant Mims in his individual capacity was deliberately indifferent to Plaintiff's health and safety shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice** and that his motions for injunctive relief (ECF Nos. 5, 6), to retain witnesses (ECF No. 11), and for a judicial inspection (ECF No. 12) be **DENIED at this time.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the Honorable C. Ashley Royal, Senior United States District

Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendant Mims, it is accordingly **ORDERED** that service be made on Defendant and that he file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendant is reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendant is similarly advised that he is expected to

diligently defend all allegations made against him and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

**FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE**

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

**DISCOVERY**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any

time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such

requests which exceed these limitations.

**IT IS FURTHER ORDERED** that Defendant comply with the attached "Required Disclosure of the Existence of Video or Photographic Evidence When Plaintiff Files Suit Against One or More Georgia Department of Corrections Employees Relating to Events That Occurred During Plaintiff's Incarceration within the Georgia Department of Corrections."

**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 5th day of August, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

**REQUIRED DISCLOSURE OF THE EXISTENCE OF VIDEO OR PHOTOGRAPHIC EVIDENCE WHEN PLAINTIFF FILES SUIT AGAINST ONE OR MORE GEORGIA DEPARTMENT OF CORRECTIONS EMPLOYEES RELATING TO EVENTS THAT OCCURRED DURING PLAINTIFF'S INCARCERATION WITHIN THE GEORGIA DEPARTMENT OF CORRECTIONS**

Counsel for the Defendants shall confer with the Defendants and with appropriate Georgia Department of Corrections ("GDC") staff, and no later than 30 days from the date of entry of this Required Disclosure file the following disclosures:

(1) State whether, at the time of the incident alleged in the complaint, the facility had stationary or mounted cameras in the area where that incident allegedly occurred.

(2) If so, state whether those cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and the identity of the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(3) State whether body-worn or handheld cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and identify the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(4) If Plaintiff complains of a use of force (either anticipated, spontaneous, or unanticipated) as that term is defined in the GDC Standard Operating Procedure, Use of Video Recording Equipment, Policy No. 204.11, and the GDC Standard Operating Procedure, Use of Force and Restraint for Offender Control, Policy No. 209.04, identify the custodian of any recordings of the events alleged. If there are no available recordings, explain in detail why the events were not recorded or, if recorded but no longer available, why the recordings were not preserved.

(5) Identify all GDC employees contacted to gather the information required by this disclosure.

Counsel is directed to preserve all video recordings and any photographs that may have captured the events giving rise to the complaint. Failure to do so may result in the imposition of sanctions.